IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REWARDS NETWORK ESTABLISHMENT SERVICES INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PANNA, INC., a New York corporation, ZANZIBAR LLC, a New York limited liability company, and EMILIO BARLETTA,<br><br>Defendants. | CASE NO. 12-cv-2544 |

**PLAINTIFF'S CORRECTED RESPONSE
TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Plaintiff Rewards Network Establishment Services Inc. ("Rewards Network") filed this action against restaurant defendants Panna, Inc. and Zanzibar LLC, asserting claims for breach of contract in connection with Rewards Network's Dining Credits Program. Panna and Zanzibar participated in the Dining Credits Program beginning in early 2008 until November 2009 when they unilaterally terminated their participation and left an outstanding balance due Rewards Network of $144,285.69. (Compl. ¶¶ 28-33.) Defendant Emilio Barletta guaranteed Zanzibar's payments to Rewards Network. (Compl., Ex. 6.)

Rather than answer the Complaint, Defendants filed a motion to dismiss or transfer under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and 28 U.S.C. §1404(a). In their motion, Defendants argue that the Court lacks personal jurisdiction over them and venue is not proper in this district because the Dining Credits Program Agreements and Personal Guaranty, which contain the relevant forum selection clauses, were never signed by Mr. Barletta on behalf of

himself, Panna or Zanzibar.[1]  Rather, Defendants claim that the Agreements[2] and Personal Guaranty were forged by Mr. Jae "Tony" Park.  (Defendants' Memorandum of Law in Support of Their Motion to Dismiss or Transfer ("Defs.' Memo") at p. 2.)   Defendants' sole evidence in support of this forgery assertion is the Declaration of Mr. Barletta.  (Defs.' Memo, Ex. A)

Defendants' motion should be denied because, on the existing record, Rewards Network has made a *prima facie* showing of personal jurisdiction.  This *prima facie* showing is based on the following:  (1) the allegations in the Complaint; (2) the Declaration of Allan Anderson, Rewards Network's Regional Sales Manager, who at all relevant times was Rewards Network's Account Executive who worked with Mr. Barletta in connection with the Dining Credits Program for the restaurants at issue (Declaration of Allan Anderson ("Anderson Dec."), att. hereto as Ex. A); (3) the Declaration of Jae "Tony" Park, a former employee and business partner of Mr. Barletta (Declaration of Jae "Tony" Park ("Park Dec."), att. hereto as Ex. B); and (4) three documents—a bank signature card, an operating agreement, and an authorization to release information (Park Dec., Exs. 10-12)—which contain Mr. Barletta's signature that looks identical to his signature on the Dining Credits Program Agreements and Personal Guaranty at issue.

All of this establishes that Mr. Barletta's signature is genuine and that personal jurisdiction exists.  If, however, the Court determines that material issues of fact remain unresolved regarding whether it has personal jurisdiction over the Defendants, dismissal of this lawsuit would still not be warranted.  Instead, this Court would be required to hold an evidentiary hearing, but that hearing can occur at any time this Court deems most appropriate.  Given that the authenticity of Mr. Barletta's signatures is intertwined with the merits of Rewards Network's

---

[1] Defendants also argue that the Court lacks personal jurisdiction over them because Defendants lack sufficient minimum contacts with Illinois, and that venue is not proper here and the more convenient forum is New York.
[2] Rewards Network attaches nine agreements to its Complaint.  Only eight are relevant to Defendants' Motion (Exs. 1-7, 9 to the Complaint).

breach of contract case, any evidentiary hearing (assuming one is even required) should take place only after discovery has been completed.

## ARGUMENT

**I.  Personal Jurisdiction Exists Over Defendants Due To Validly Executed Forum Selection Clauses.**

Defendants argue that the Court lacks personal jurisdiction over them because Mr. Barletta's signatures on the Agreements and Guaranty, which contain the relevant forum selection clauses, is a forgery, and because no other basis for personal jurisdiction exists.[3] The record belies Defendants' cry of forgery, however, as Rewards Network's written submissions alone establish the authenticity of Mr. Barletta's signature. Even if that were not the case, Rewards Network would be entitled to prove personal jurisdiction at an evidentiary hearing, which (if necessary) can occur up to and including the time of trial, and here, would be most effectively conducted after discovery is completed. In no case is Defendants' request for outright dismissal warranted.

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff initially need only show that it has established a *prima facie* case that personal jurisdiction exists. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *accord Sjostrom & Sons, Inc. v. Wilson Tile & Terrazzo, Inc.*, 1992 WL 280432, *2 (N.D. Ill. Sept. 30, 1992) (att. as Ex. C). This can be done purely by written submissions and the allegations in the complaint. *Purdue*, 338 F.3d at 782. When determining if the plaintiff has made a *prima facie* case of jurisdiction, all doubts are to be resolved in the plaintiff's favor. *Id.* One way a party can consent to personal jurisdiction, and thereby waive its right to challenge personal jurisdiction, is by agreeing to a mandatory forum selection clause. *LKQ Corp. v.*

---

[3] Rewards Network is not arguing that any other basis for personal jurisdiction exists.

*Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) ("[A] valid forum selection provision renders any examination of the defendant's contacts with the forum state unnecessary.").

An evidentiary hearing on the issue of personal jurisdiction is only necessary if, after a *prima facie* case of personal jurisdiction has been established, the defendant has raised an issue of material fact as to whether jurisdiction exists. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 712-13 (7th Cir. 2002). Even if the defendant does this, district courts are afforded wide discretion over when such an evidentiary hearing should be held. *MacNeil Automotive Prods., Ltd. V. Cannon Automotive Ltd.*, 2012 WL 2396121, *2-3 (N.D. Ill. June 20, 2012) (att. as Ex. D). This discretion has been exercised cautiously when the issue of material fact the defendant has raised regarding personal jurisdiction is intertwined with an issue of material fact in the underlying merits of the case. *See Marathon Petroleum Co., LLC v. Aliaga*, 2010 WL 480978, *3 (N.D. Ohio Feb. 4, 2010) (att. as Ex. E). In such instances, judges have decided to wait until after discovery has been taken before conducting an evidentiary hearing on jurisdiction, because doing so "allows a plaintiff to present all of [his or her] proof in a coherent, orderly fashion and without the risk of prejudicing [his or her] case on the merits." *Id.*, 2010 WL 480978 at *3.

Here, Rewards Network has alleged in its Complaint that Defendants signed various Agreements that contain the following forum selection clause:

> **THIS AGREEMENT AND ALL CLAIMS DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS . . . OF THE STATE OF ILLINOIS. FOR ANY ACTION, SUIT OR PROCEEDING RAISING SUCH CLAIMS THE EXCLUSIVE FORUM SHALL BE THE STATE COURT LOCATED IN COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS AND THE PARTIES HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF THE FOREGOING COURTS.**

(Compl., Exs. 3, 5-6.) Mandatory forum selection clauses such as this one are enforceable. *See Paper Express, Ltd. v. Pfankuch Mashinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Thus, this clause alone establishes the Court's *prima facie* personal jurisdiction over Defendants.

Defendants argue that they should not be bound to this forum selection clause because Mr. Barletta claims his signature on each Agreement containing this clause is a forgery. To support this claim, Defendants offer the Declaration of Mr. Barletta, in which Mr. Barletta states that he never signed the relevant Agreements and that, instead, he believes his former business associate Tony Park forged his signature. (Defs.' Memo, Ex. A, ¶¶ 4-13.) To bolster this claim, Mr. Barletta points out that his signature must be a forgery because (1) Mr. Barletta's printed name that appears above his signature has his first name spelled wrong, (2) some of the phone numbers listed on the Agreements are not Mr. Barletta's, but instead are Mr. Park's (or so Mr. Barletta believes), (3) some of the titles in the signature blocks on some of the Agreements are not titles Mr. Barletta held in his restaurant companies, and (4) Mr. Barletta's address is incorrectly listed on one of the Agreements. (Id.) While Mr. Barletta raises these points in his best effort to make the Agreements sound like lazy and obvious forgeries, Rewards Network has submitted along with this brief the Declarations of Tony Park and Allan Anderson, which dispel all suspicion that Mr. Barletta has attempted to plant with this Court and instead provide a simple explanation for each alleged discrepancy, none of which is the result of forgery.

As it relates to the misspelled first name, Mr. Anderson attests that he (not Tony Park) is the person responsible for misspelling Mr. Barletta's first name and that he (Anderson) mistakenly believed that Mr. Barletta used a second "e" rather than an "i" in his first name. (Anderson Dec., ¶9.)

5

As for the phone numbers, Mr. Park attests that the phone number on Exhibit 4 is likely either the former phone number of Arlet Realty (Arlet Realty is a real estate company owned by Mr. Barletta) or the former phone number of Merkato 55 (Merkato 55 was the restaurant owned and operated by AM Operating Group, LLC of which Mr. Barletta is a member). (Park Dec., ¶9.) In any event, it is *not* Mr. Park's phone number. (Id.) Mr. Anderson attests that he was provided that phone number and one other by Mr. Park, which is in keeping with Mr. Barletta's instruction to Mr. Anderson to "Tell Tony what you need and we'll get it to you." (Anderson Dec., ¶¶ 6, 12.)

As for the titles listed under Mr. Barletta's signature line in certain of the Agreements, Mr. Barletta claims that he is sometimes mistakenly labeled as the member-manager of Panna, Inc. instead of the president, or conversely is mistakenly labeled as president of Zanzibar LLC instead of member-manager. (Defs.' Memo, Ex. A, ¶¶ 7-8.) Defendants claim that these errors establish that someone who did not know Mr. Barletta's title forged Mr. Barletta's signatures. However, the record establishes that the mislabeled titles were written by Mr. Anderson and one of Mr. Anderson's branch coordinators, Sharon Rivera or Rinah Arzan. Specifically, Mr. Anderson attests that he, Ms. Arzan and/or Ms. Rivera would fill in Mr. Barletta's title on the various Agreements and then Mr. Anderson would deliver those Agreements to Mr. Park for Mr. Barletta to sign. (Anderson Dec., ¶¶ 7, 10-11; Park Dec., ¶ 8.) The record establishes that Mr. Anderson, Ms. Rivera and/or Ms. Arzan simply made the mistake of listing Mr. Barletta's title on some of the Agreements as "member-manager" instead of "president," and vice versa (Anderson Dec., ¶¶ 10-11), which is an understandable mistake given that Mr. Barletta was president of one entity but not member-manager, and was member-manager of another entity but

6

not president (see Defs.' Memo, Ex. A, ¶¶ 7-8). While this reflects a reality of the business world – that mistakes happen – it does not show fraud.

As to Mr. Barletta's address, again, Mr. Anderson admits that the misspelling of "Alley" and "Aleey" was likely a computer mistake on Rewards Network's end. (Anderson Dec., ¶ 13.)

Finally, as to Mr. Barletta's overarching claim that he did not sign the various Agreements at issue, Rewards Network has presented evidence that directly dispels that claim as well. Mr. Park attests in his Declaration that he *personally witnessed* Mr. Barletta sign the various Agreements. (Park Dec., ¶8.) Specifically, Mr. Park would deliver the Agreements to Mr. Barletta at either Mr. Barletta's restaurants or real estate office to be signed, and would then deliver the Agreements to Mr. Anderson after Mr. Park witnessed Mr. Barletta sign them. (Id.). This is supported by the fact that one of the signature pages on one of the Agreements was clearly faxed from one of Mr. Barletta's restaurants, Dopo Teatro. (Compl., Ex. 2) (showing a fax heading that reads: `12/02/2008 12:22  DOPOTEATRO    PAGE 03/03`.)

All of this establishes that the alleged discrepancies in the various Agreements are not the result of fraud, and that Mr. Barletta, in fact, signed the various Agreements himself (in front of Mr. Park)**.**

Even if the above referenced attestations do not extinguish the suspicion of forgery, the three documents attached to Mr. Park's Declaration which contain Mr. Barletta's signature on unrelated agreements should. These three documents—(1) a bank signature card, (2) an operating agreement, and (3) an authorization to release information—were in Mr. Park's, *not Rewards Network's,* possession as a result of Mr. Park's prior business dealings with Mr. Barletta. (Park Dec., ¶¶4-5; Park Dec., Exs. 10-12.) These three documents were not executed in connection with Rewards Network's Dining Credits Program Agreements. All three

7

documents contain the signature of Mr. Barletta. The signature in these documents looks identical to the signature Mr. Barletta claims Mr. Park forged on the Rewards Network Agreements. (*Compare* Park. Dec., Exs. 10-12 *with* Compl., Exs. 1-7, 9.) Of course, Mr. Barletta can (and likely will) argue that Mr. Park forged his signature on these three documents as well. Such a claim that Mr. Park seemingly forged Mr. Barletta's signature on all of the documents in connection with their joint business venture is just not credible.

These facts established by Mr. Park's and Mr. Anderson's Declarations defeat any claim of forgery that Mr. Barletta's Declaration raises, and in doing so, distinguish the Defendants' cited case law from the situation here. Specifically, Defendants cite *Dorchester Fin. Secs. Inc. v. Banco BRJ, S.A.*, No. 11 Civ. 1529(IMW)(KNF), 2012 WL 231567 (S.D.N.Y. Jan. 25, 2012) (att. as Ex. F) from the Southern District of New York as being analogous to the dispute here, but it is anything but. In *Dorchester*, the plaintiff argued that personal jurisdiction over the defendant existed because of a forum selection clause in a credit agreement that the defendant allegedly signed. The defendant submitted evidence establishing that it had never even heard of the plaintiff and never transacted business with the plaintiff, and that the defendant's signature on the credit agreement was a forgery. 2012 WL 231567, *4-7. The district court repeatedly stated throughout its opinion that the plaintiff "[did] not refute [defendant's] statements." *Id.* at *5-7 (noting multiple times that plaintiff "has not provided any evidence to refute [defendant's] statements," and "has not presented any evidence to refute [defendant's] direct, highly specific testimonial evidence.").

Here, Rewards Network has done precisely what the plaintiff failed to do in *Dorchester*, by submitting multiple affidavits that directly address and dispel all of Barletta's alleged indicia of fraud. Furthermore, Barletta has not disputed that Defendants did, in fact, have agreements

8

with Rewards Network, just that the agreements were oral and not written. (Defs.' Memo, Ex. A, ¶4 ("I do not dispute and was aware that in or about 2008 and 2009, certain restaurant companies with which I was associated entered into 'Dining Credits Program Agreements' with Plaintiff Rewards Network Establishment Services Inc.")  This is another distinguishing fact from *Dorchester*, in which the defendant was able to convincingly bolster its claim of forgery by showing it had never even heard of or dealt with the plaintiff to begin with, so it made no sense for the parties to have entered into any written contract.  *Dorchester* is merely an example of a plaintiff with no evidence to back-up its argument of personal jurisdiction, and thus is not useful or controlling here.

Instead, the more instructive case is *Marathon Petroleum Co., LLC v. Aliaga*, 2010 WL 480978 (N.D. Ohio Feb. 4, 2010) (att. as Ex. E).  In *Marathon*, the defendant argued that personal jurisdiction was lacking because its signature on the agreements with the relevant forum selection clause were forgeries.  2010 WL 480978, *2.  The district court held that the plaintiff had established a *prima facie* showing of personal jurisdiction by submitting the signed agreements containing a forum selection clause, and then denied the defendant's request for an immediate evidentiary hearing.  Specifically, the judge noted that the issue of whether the agreements were validly entered into was directly intertwined with the merits of the plaintiff's case, and that any evidentiary hearing should take place after the factual record had been developed because "[o]ne hearing, rather than two, to adjudicate contested facts makes better use of judicial resources."  2010 WL 480978, *3.  The judge did not feel it appropriate to "require plaintiff to put forth proof that would essentially require it to establish its right to relief" before trial, because doing so would not only be difficult without the benefit of discovery, but also might prejudice the plaintiff's case.  *Id.* (citing *Serras v. First Tenn. Bank of Nat'l Assoc.*, 875

F.2d 1212, 1215 (6th Cir. 1989) ("In many cases, then, a district court may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made a *prima facie* showing [of personal jurisdiction] and to reserve all factual determinations on the issue for trial.")).

Here, Rewards Network has established personal jurisdiction over the Defendants via the forum selection clause and Declarations of Messrs Park and Anderson. While Rewards Network believes it has defeated Defendants' challenge of personal jurisdiction and that Defendants' motion can be denied on the written record alone, if this Court still determines that further attention is needed, any evidentiary hearing should not occur until discovery has been completed. As was the case with *Marathon*, the issue of the legitimacy of Mr. Barletta's signature is intertwined with the underlying merits of Rewards Network's case. Thus, allowing discovery to proceed will allow Rewards Network to develop the factual record efficiently and to make the most complete and coherent presentation of any facts regarding Mr. Barletta's signature and knowledge of his relationship with Rewards Network. It would also prevent Rewards Network from prejudicing its underlying case by having to present its evidence on the merits too early. Finally, proceeding in such a manner would not prejudice either party, because whether this case belongs here or in New York, the same discovery will be taken, and should this Court later decide New York is the proper forum, any discovery taken up until that point would be just as applicable to a lawsuit in New York as it would here. Thus, any risk of duplication of discovery is removed.

For these reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(2) should be denied.

**II.    Venue Is Proper Because Defendants Agreed That Any Lawsuit Against Them Has To Be Brought In The Northern District Of Illinois.**

Defendants next argue that venue is improper in the Northern District of Illinois because the forum selection clause is unenforceable due to forgery. This argument fails for the same reasons discussed above. Venue in the Northern District of Illinois is proper, and indeed is mandatory per the parties' Agreements. *See Paper Exp. Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("The law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced . . . .").

Here, the parties' Agreements require that "**FOR ANY ACTION, SUIT OR PROCEEDING RAISING SUCH CLAIMS THE EXCLUSIVE FORUM SHALL BE THE STATE COURT LOCATED IN COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS** . . . ." (Compl., Exs. 3, 5-6.) Given this obligatory language coupled with Rewards Network's evidence contradicting Defendants' assertion of forgery, Defendants' venue argument should be rejected.

**III.   By Signing The Mandatory Forum Selection Clause, Defendants Waived Any Argument That This Case Should Be Transferred To New York For Defendants' Convenience.**

Finally, Defendants argue that even if this Court enforces the mandatory forum selection clause, Defendants should still not be bound by that clause and venue should still be transferred to New York because New York is a more convenient forum for Defendants. But Defendants waived this argument when they signed the forum selection clause obligating any suit against them to be brought in this Court.

The Seventh Circuit has held that a mandatory forum selection clause is presumptively valid and enforceable unless "(1) its incorporation into the contract was the result of fraud, undue

influence or overwhelming bargaining power, (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court, or (3) its enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision." *AAR Intern., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001). Further, when a party consents to jurisdiction via a forum selection clause, any inconvenience that would justify transferring venue would have to pertain to third parties, not the defendant. *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990). The Seventh Circuit has held that enforcing a forum selection clause that required a party in Illinois to litigate in Germany was not so inconvenient that the Illinois party would be deprived of its day in court. *Paper Express*, 972 F.2d at 758.

Here, the Defendants have failed to show that proceeding in the Northern District of Illinois would be "so gravely difficult and inconvenient that the [Defendants] will for all practical purposes be deprived of [their] day in court," and Defendants have not even tried to argue that litigating in the Northern District of Illinois would contravene a public policy of Illinois. Furthermore, Defendants have already conceded that there is no additional inconvenience to third parties if the case remains in Illinois, which defeats Defendants' claim of inconvenience outright because only inconvenience to third parties can be considered when an enforceable mandatory forum selection clause is at issue. (See Defs.' Memo at p. 13 (admitting that "ease of access to witnesses and documents does not favor either Plaintiff or Defendants" and that "[t]hird-party witnesses will play either no role in this dispute or a very limited role.")).

Thus, if this Court dismisses Mr. Barletta's claim of fraud – as Rewards Network believes it should – and deems the forum selection clause at issue enforceable, Defendants

cannot transfer this case to New York based solely on convenience, and no other basis for transfer exists.

## **CONCLUSION**

For these reasons, Defendants' motion should be denied in its entirety.


Dated: August 21, 2012

By    /s/ Robin L. Wolkoff

ATTORNEYS FOR PLAINTIFF

Robin L. Wolkoff (ARDC #6204937)
Brian J. Wilson (ARDC #6294099)
Fox, Hefter, Swibel, Levin & Carroll, LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
(312) 224-1201 (fax)